# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| United States of America<br>v.<br>ALEKSANDR AKOPOV<br>and<br>VADIM KAZAKEVICH<br><br>*Defendant(s)* | )<br>)<br>)  Case No.  3:25-mj-71125 MAG<br>)<br>)<br>)<br>) |

FILED
Sep 16 2025
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __See Attached Affidavit__ in the county of __San Francisco and Alameda__ in the __Northern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) | Distribution of 500 Grams and More of a Mixture and Substance Containing a Detectable Amount of Methamphetamine (AKOPOV) |
| 18 U.S.C. § 922(a)(1)(A) and 18 U.S.C. § 2 | Dealing Firearms Without a License and Aiding and Abetting (BOTH DEFENDANTS) |
| 18 U.S.C. § 922(g)(1) | Felon in Possession of Firearm(s) (BOTH DEFENDANTS) |

This criminal complaint is based on these facts:

See attached Affidavit of Special Agent Katie L. Coggins

☑ Continued on the attached sheet.

Approved as to form  /s/ *Eli J. Cohen*
                    SAUSA Eli J. Cohen

/s/ Katie L. Coggins
*Complainant's signature*

Special Agent Katie L. Coggins, DEA
*Printed name and title*

Sworn to before me by telephone.

Date: 9/15/2025

*Judge's signature*

City and state: San Francisco, California

Hon. Alex G. Tse, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANTS

I, Katie L. Coggins, a Special Agent of the United States Department of Justice, Drug Enforcement Administration ("DEA"), being duly sworn, hereby state:

## INTRODUCTION

1. I make this affidavit in support of an application under Rules 3, 4, and 4.1 of the Federal Rules of Criminal Procedure for a Criminal Complaint charging **Aleksandr AKOPOV ("AKOPOV")** with:

COUNT 1: Distribution of 500 Grams and More of a Mixture and Substance Containing a Detectable Amount of Methamphetamine, in violation of 21 U.S.C. §§ 841(a) and (b)(1)(A)(viii), occurring on or about June 12, 2025, in the Northern District of California;

COUNT 2: Dealing Firearms Without a License and Aiding and Abetting, in violation of 18 U.S.C. § 922(a)(1)(A) and 18 U.S.C. § 2, beginning at an unknown time but in no event later than on or about June 12, 2025, and occurring until at least on or about July 11, 2025, in the Northern District of California; and,

COUNT 3: Felon in Possession of Firearms, in violation of 18 U.S.C. § 922(g)(1), occurring on or about June 12, 2025, in the Northern District of California;

and charging **Vadim KAZAKEVICH ("KAZAKEVICH")** with:

COUNT 4: Dealing Firearms Without a License and Aiding and Abetting, in violation of 18 U.S.C. § 922(a)(1)(A) and 18 U.S.C. § 2, beginning at an unknown time but in no event later than on or about July 3, 2025, and occurring

1

        until at least on or about July 11, 2025, in the Northern District of California; and,

COUNT 5:    Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1), occurring on or about July 3, 2025, in the Northern District of California;

and Arrest Warrants pursuant to that Criminal Complaint.

## SOURCES OF INFORMATION

2.    The facts stated in this affidavit come from my personal observations, my participation in the below-described investigation, my training and experience, information from records and databases, and information obtained from other agents, officers, and witnesses. Where statements made by other individuals (including other Special Agents and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records is referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

3.    Because this Affidavit is submitted for the limited purpose of establishing probable cause for a Criminal Complaint and Arrest Warrants, I have not included every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause for a Criminal Complaint and Arrest Warrants. My understanding of the facts and circumstances of the case may evolve as the investigation continues.

## AFFIANT BACKGROUND

4. I am an "investigator or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, the narcotics offenses enumerated in Title 21 of the United States Code and other federal offenses.

5. I am a Special Agent ("SA") with the DEA and have been since December 2023. I am currently assigned to the San Francisco Division Metro Task Force Group 1 ("MTF-1"). In that capacity, I am assigned to investigate drug trafficking organizations ("DTOs") in the San Francisco Bay Area.

6. I received 17 weeks of specialized drug law enforcement training at the DEA training academy in Quantico, Virginia, from August 2023 to December 2023. The training curriculum covered all aspects of drug investigations, including identification of controlled substances, physical and electronic surveillance, utilization of confidential sources, interview techniques, undercover operations, financial investigations, money laundering techniques, and the general operation of drug trafficking organizations. This training included instruction in the investigation of federal drug violations, including, but not limited to Title 21, United States Code, Sections 841 and 846. Additionally, this training included several hundred hours of comprehensive, formalized instruction in subjects including, but not limited to, narcotics investigations, drug identification, detection, interdiction, financial investigations and money laundering, identification and seizure of drug related assets, undercover operations, and electronic and physical surveillance procedures.

7. Prior to my employment with the DEA, I completed my Master of Science Degree in Criminal Justice at the University of New Haven. I also earned a Bachelor of Science in

3

Psychology in 2021 at the University of South Carolina Upstate.

8.      During the course of my employment as a DEA Special Agent, I have participated in narcotics investigations in a supporting role. I have debriefed confidential sources and witnesses who had personal knowledge regarding narcotics trafficking organizations. In addition, I have discussed with numerous law enforcement officers and confidential sources the methods and practices used by narcotics traffickers. I have also participated in many aspects of drug investigations including, but not limited to telephone toll analysis, physical surveillance, and assisting in court-ordered wiretap investigations. Moreover, I have executed federal narcotics search and arrest warrants that resulted in the arrest of suspects and seizure of narcotics.

9.      Through my training, education, experience, and my conversations with other agents and officers who conduct drug investigations, I have become familiar with narcotics traffickers' use of mobile telephones, and their use of numerical codes and code words to conduct their business. Also, I have become familiar with narcotics traffickers' methods of operation, including but not limited to the manufacturing, distribution, storage, and transportation of narcotics, and the methods used by drug traffickers to collect, transport, safeguard, remit, and/or launder drug proceeds.

10.     Since beginning my employment, I have worked with other experienced agents, law enforcement officers, and prosecutors on cases that apply the use of electronic surveillance to investigating drug trafficking organizations trafficking narcotics across multiple jurisdictions within the United States, including in the San Francisco Bay Area and the Tenderloin District of San Francisco.

## APPLICABLE STATUTES

11.     21 U.S.C. § 841(a)(1) makes it a crime for any person to knowingly distribute a controlled substance, except as provide in its subchapter, and 21 U.S.C. § 841(b)(1)(A) prescribes certain penalties depending upon the type and quantity of controlled substance distributed. 21 U.S.C. § 841(b)(1)(A)(viii) dictates that such enhanced penalties apply to the distribution of 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers.

12.     18 U.S.C. § 922(a)(1)(A) makes it a crime for any person except a licensed importer, licensed manufacturer, or licensed dealer to engage in the business of importing, manufacturing, or dealing in firearms.

13.     18 U.S.C. § 922(g)(1) makes it a crime for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to possess a firearm or ammunition in or affecting interstate commerce.

14.     18 U.S.C. § 2(a) provides that whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.  18 U.S.C. § 2(b) provides that whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

## STATEMENT OF PROBABLE CAUSE

**June 12, 2025 Controlled Purchase of Methamphetamine and Firearms from AKOPOV**

15.     On or about June 12, 2025, at approximately 8:50 pm, an Undercover Agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") ("UC-1") and an Undercover

Agent from the DEA ("UC-2") conducted a controlled purchase of two handguns and approximately 892 grams of methamphetamine from **AKOPOV**.  UC-1 arranged the transaction in the days preceding.

16. UC-1 and UC-2 met with **AKOPOV** at a grocery store parking lot near 850 La Playa Street, San Francisco, California, which is in the Northern District of California. **AKOPOV** gave UC-2 a shopping bag containing approximately two pounds of suspected methamphetamine and two handguns.  UC-1 gave **AKOPOV** $2,300 and UC-2 gave **AKOPOV** $3,000, respectively, in return for the handguns and suspected methamphetamine, depicted below:



17. The handguns were later identified as a Glock model 22 .40 caliber semiautomatic and a Smith & Wesson model M&P Bodyguard .380 caliber semiautomatic.

18. The suspected methamphetamine was sent to a DEA laboratory, where it tested positive for methamphetamine hydrochloride at a net weight of approximately 892 grams and 100% purity, +/- 7%.

6

**June 26, 2025 Controlled Purchase of Methamphetamine and Firearms from AKOPOV**

19.     On or about June 26, 2025, at approximately 8:05 pm, UC-1 and UC-2 conducted a controlled purchase of one handgun and approximately one pound of methamphetamine from **AKOPOV**.  UC-1 arranged the transaction in the days preceding.

20.     UC-1 and UC-2 again met with **AKOPOV** in the parking lot near 850 La Playa Street, San Francisco, California.  **AKOPOV** gave UC-2 an envelope containing a handgun and loaded magazine, and a zip-loc bag containing approximately one pound of suspected methamphetamine.  In return, UC-1 gave **AKOPOV** $1,200 and UC-2 gave **AKOPOV** $1,500.

21.     The handgun was later identified as an FMK model 9C2 semiautomatic.

22.     The suspected methamphetamine was sent to a DEA laboratory, where it tested positive for methamphetamine hydrochloride at a net weight of approximately 441 grams and 100% purity, +/- 7%.  The handgun and methamphetamine are depicted below:



**July 3, 2025 Controlled Purchase of Firearms from AKOPOV and KAZAKEVICH**

23.     On or about July 3, 2025, at approximately 11:15 am, UC-1 and a separate Undercover ATF Agent ("UC-3") met with **AKOPOV** and **KAZAKEVICH** near the marina located at 1853 Embarcadero, Oakland, California, which is in the Northern District of

7

California. UC-1 arranged the transaction in the days preceding.

24. **AKOPOV** arranged the transaction with UC-1 and was present during its occurrence. When the UCs arrived at the marina, **AKOPOV** told them his source would be coming off a boat. **AKOPOV** made a phone call, and a Task Force Officer ("TFO") subsequently observed **KAZAKEVICH** walking down a dock in the marina carrying a black garbage bag. The UCs, **AKOPOV**, and **KAZAKEVICH** all went to a nearby laundry room. The UCs gave **KAZAKEVICH** $2,800 in return for two AR-style rifles and $1,000 in return for a handgun. **KAZAKEVICH** is depicted below presenting the firearms during the transaction:

  

25. A TFO subsequently observed **AKOPOV** and **KAZAKEVICH** enter a boat docked in the marina.

26. The firearms were later identified as a Defense Procurement Manufacturing Services A15, a JD Machine Tech TR1, and a Ruger P85 semiautomatic, respectively. The firearms are depicted below:



**July 11, 2025 Controlled Purchase of Firearms from AKOPOV and KAZAKEVICH**

27. On or about July 11, 2025, at approximately 11:00 am, UC-1 and UC-3 met with **AKOPOV** in a parking lot near the same marina in Oakland where they had conducted the transaction with **AKOPOV** and **KAZAKEVICH** on July 3, 2025. A TFO observed **AKOPOV** exit the same boat that **AKOPOV** and **KAZAKEVICH** went to after the aforementioned July 3, 2025 purchase, carrying a plastic shopping bag.

28. **AKOPOV** met with UC-1 and UC-3, giving them the shopping bag in return for $3,200. During conversation, **AKOPOV** made reference to previously receiving a federal prison sentence of "a year and a day." A TFO subsequently observed **AKOPOV** return to the boat, appearing to speak with someone inside, then enter the covered area of the boat. The TFO then observed **AKOPOV** and **KAZAKEVICH** exit the boat together, walk down the docks, and get into **AKOPOV**'s car before driving away together.



*KAZAKEVICH (L) and AKOPOV (R)*

29. Agents later identified the contents of the plastic bag that **AKOPOV** had given UC-1 and UC-3 as three handguns: a Ruger Speed Six revolver, a Walther PP semiautomatic, and an FEG P40RZ semiautomatic. The handguns are depicted below:

9



30. I have inspected both **AKOPOV** and **KAZAKEVICH**'s criminal histories and have learned that **AKOPOV** has prior felony convictions for Vehicle Theft, Burglary, and Theft of Mail, among others, and that **KAZAKEVICH** has prior felony convictions for Burglary, Possess/Manufacture ID to Defraud, and Owning a Chop Shop, among others. Both **AKOPOV** and **KAZAKEVICH** have previously received sentences of imprisonment in excess of one year.

31. An ATF agent trained in determining the interstate nexus of firearms and ammunition has examined all of the above-described firearms and determined that, with the exception of the FMK handgun sold on June 12, 2025, and JD Machine Tech TR1 AR-style rifle sold on July 3, 2025, they were manufactured outside the State of California. Accordingly, with the exception of the FMK handgun and JD Machine Tech TR1 AR-style rifle, the firearms **AKOPOV** and **KAZAKEVICH** sold and/or possessed in the above-described transactions moved in and/or affected interstate or foreign commerce.

32. An ATF agent has searched the agency's Federal Firearms License ("FFL") database and determined that, in addition to being prohibited from possessing firearms and/or ammunition by virtue of their felony convictions, neither **AKOPOV** nor **KAZAKEVICH** have licenses to engage in the business of dealing in firearms.

10

**CONCLUSION**

33. Based on my training and experience, and the facts and circumstances set forth above, I believe probable cause exists that:

COUNT 1: On or about June 12, 2025, in the Northern District of California, **AKOPOV** violated 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii);

COUNT 2: Beginning at an unknown time, but no later than on or about June 12, 2025, and occurring until at least on or about July 11, 2025, in the Northern District of California, **AKOPOV** violated 18 U.S.C. § 922(a)(1)(A) and 18 U.S.C. § 2;

COUNT 3: On or about June 12, 2025, in the Northern District of California, **AKOPOV** violated 18 U.S.C. § 922(g)(1);

and that probable cause exists that:

COUNT 4: Beginning at an unknown time, but no later than on or about July 3, 2025, and occurring until at least on or about July 11, 2025, in the Northern District of California, **KAZAKEVICH** violated 18 U.S.C. § 922(a)(1)(A) and 18 U.S.C. § 2;

COUNT 5: On or about July 3, 2025, in the Northern District of California, **KAZAKEVICH** violated 18 U.S.C. § 922(g)(1).

Accordingly, I respectfully request that the Court issue a Criminal Complaint and Arrest Warrants for **Aleksandr AKOPOV** and **Vadim KAZAKEVICH**.

34. I further request, in order to avoid **AKOPOV** and/or **KAZAKEVICH** fleeing, destroying evidence, intimidating witnesses, or otherwise changing their behavior prior to the execution of the arrest warrants, and for the safety of agents and officers, that this affidavit, and

the corresponding Criminal Complaint and Arrest Warrants, be filed under seal until execution of the arrest warrants, except that copies should be made available to the United States Attorney's Office, the Drug Enforcement Administration, the Bureau of Alcohol, Tobacco, Firearms and Explosives, and other law enforcement agencies as necessary for use in investigation and prosecution.

35. I further request, for the same reasons, that the docket be sealed until execution of the Arrest Warrants.

I declare under penalty of perjury that the above is true and correct to the best of my knowledge and belief.

*/s/ Katie L. Coggins*
Katie L. Coggins
Special Agent
Drug Enforcement Administration

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 15th day of September 2025. This application, complaint, and warrants are to be filed under seal.

_____
HONORABLE ALEX G. TSE
United States Magistrate Judge

12