CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ELI J. COHEN (NYBN 5539226)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Eli.Cohen@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> VADIM KAZAKEVICH, <br><br> Defendant. | CASE NO. 3:25-mj-71125 MAG-2 <br><br> MEMORANDUM IN SUPPORT OF UNITED STATES' APPEAL OF ORDER OF RELEASE <br><br> Hon. Trina L. Thompson |

## INTRODUCTION

The United States respectfully requests that the Court revoke the order of release of defendant Vadim Kazakevich ("Kazakevich" or the "defendant"), issued by Magistrate Judge Joseph C. Spero on September 25, 2025, and moves this Court for entry of an order detaining Kazakevich pending trial. *See* 18 U.S.C. § 3145. Kazakevich has been charged by criminal complaint with one count of violating 18 U.S.C. § 922(a)(1)(A) and 18 U.S.C. § 2 – Dealing Firearms Without a License and Aiding and Abetting, and one count of violating 18 U.S.C. § 922(g)(1) – Felon in Possession of a Firearm, for which he faces maximum penalties of five and 15 years, respectively. His criminal history and instant conduct provide clear and convincing evidence that Kazakevich presents a danger to the community that no

condition or combination of conditions can reasonably mitigate, and at least a preponderance of the evidence that he presents a risk of nonappearance that no condition or combination of conditions can reasonably mitigate. For those reasons and as explained below, the United States now moves this Court to order Kazakevich detained pending trial in this matter.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Kazakevich's Background and Criminal History

Vadim Kazakevich, age 51, has a recorded criminal history that spans more than three decades and involves various instances of theft, fraud, and other dishonest conduct. It began as early as April 1992, when he was convicted of misdemeanor Hit and Run: Property Damage, and sentenced to five days jail. A little over two months later, he was convicted of misdemeanor vehicle theft and sentenced to 10 days jail and three years probation, with the imposition of sentence suspended. Six months after that, he was again convicted of misdemeanor vehicle theft, this time receiving a sentence of 30 days jail and two years probation, with the imposition of sentence suspended. Six months later, in June 1993, he was convicted of felony burglary and sentenced to 120 days jail and three years probation, with the imposition of sentence suspended. In October 1993, he was convicted of felony receipt of stolen property and sentenced to 16 months prison. In October 1995, he was convicted of felony possession of identification to defraud and again sentenced to 16 months prison. In January 1999, he was convicted of misdemeanor false ID and violating his parole, ultimately being sent back to state prison. He was charged with violating parole again in 2001 and returned to prison that same year. In October 2003, he was convicted of felony ID forgery and sentenced to 16 months prison.

In February 2005, he was again convicted of felony receipt of stolen property and again sentenced to 16 months prison. He was convicted of drug possession in 2006 and given 62 days jail and three years probation. He was convicted of felony receipt of stolen property in 2007 and sentenced to a year in jail and five years probation. In May 2014, he was convicted of felony drug possession, felony receipt of stolen property, felony identity theft, and felony vehicle theft, and sentenced to 36 months prison and a year of probation. And then in 2019, he was convicted of running a chop shop and buying/selling vehicles with altered numbers, and given just three days in jail and two years probation. He has had various other arrests for similar crimes.

US MEMO ISO APPEAL OF RELEASE ORDER       2
3:25-mj-71125 MAG-2

Kazakevich has used at least four distinct aliases (i.e. something other than derivations of his true name) over the course of his criminal history. Though his RAP sheets list his place of birth as the Soviet Union, he appears to have claimed to be from at least five nations, including Belarus, Russia, Romania, Western Sahara (formerly Spanish Sahara), and the United States.

## II.    The Instant Matter

In the instant matter, Kazakevich conspired with co-defendant Aleksandr Akopov to illegally deal various firearms, acting as both the customer-facing seller and supplier from his residential boat in an Oakland marina. In the days preceding July 3, 2025, Akopov coordinated the sale of two AR-style rifles to an undercover federal agent near the marina that housed Kazakevich's boat. On July 3, Akopov met with undercover agents ("UCs") by the marina and told them his source, who he called "Vadim," would be coming from a nearby boat. Akopov then placed a call, spoke to someone in what sounded like Russian, and shortly thereafter agents observed Kazakevich walking down a dock in the marina carrying a large garbage bag. Akopov, Kazakevich, and the UCs proceeded to a nearby laundry room.

Kazakevich presented the UCs with two AR-style rifles and one UC gave him $2,800 in return. When the UCs asked about a different advertised gun, Kazakevich withdrew what he called his "personal" handgun from his belt and showed it to the UCs. They were ultimately able to convince him to sell it to them for $1,000. Unbeknownst to Kazakevich and Akopov, agents were video recording the entire interaction.



Kazakevich was initially reluctant to sell his personal handgun to the UCs because, as he put it: "I already have setup where I have a bunch of bullets for it . . . I make my own rubberized bullets . . . when you pop it, right, it just make a dent in motherf\*\*\*er's head, knock him out." Kazakevich

proceeded to tell the UCs about special ammunition he claimed to have for the handgun, including "mercury bullets" which "when you hit something, it blows up" and are "highly illegal," and "armor piercing" bullets. He went on to withdraw certain rounds from the handgun magazine, hold one up, and tell the UCs that it was an armor-piercing round that could "go through the jackets, like, police jackets." It does not in fact appear that the ammunition Kazakevich sold on July 3 fits the above descriptions.

When one of the UCs asked Kazakevich's name, he said that it was "Vladimir." He went on to say that he "did time" in El Centro and San Pedro. When asked where he was from, Kazakevich said "Lithuania." He then claimed "I can get detonators too."



*AR-style rifles, handgun, and ammunition sold on July 3, 2025*

When one of the UCs asked how many and what types of firearms Kazakevich could supply, he replied: "Depends how much you pay. Money talks and bulls**t walks."

In the days preceding July 11, 2025, one of the UCs coordinate the purchase of three handguns with Akopov. On that date, the UCs again met with Akopov by the same Oakland marina. This time, Akopov came out of Kazakevich's boat carrying a plastic shopping bag. He met with the UCs in the

  

US MEMO ISO APPEAL OF RELEASE ORDER      4
3:25-mj-71125 MAG-2

parking lot and gave them the bag in return for $3,200. After the transaction, Akopov walked back to Kazakevich's boat, spoke with someone inside, then entered. Kazakevich and Akopov subsequently exited the boat, walked down the dock, and departed the area together.

On September 15, 2025, the Hon. Alex G. Tse authorized the instant complaint, and signed a search warrant for Kazakevich's boat, among other locations. On September 18, agents executed the warrant, recovering a Luger semiautomatic handgun and various ammunition from Kazakevich's boat.



### III. The September 25, 2025 Detention Hearing

Kazakevich made his initial appearance on September 19, and the government moved for detention. A detention hearing was held before Magistrate Judge Spero on September 25, 2025. After reviewing the government's submission (Dkt. No. 16) and a bail report prepared by Pretrial Services, hearing argument from the parties, and speaking to the defendant's proposed surety, Magistrate Judge Spero ordered Kazakevich released under a $15,000 unsecured bond, co-signed by his brother, and certain conditions. The United States informed Magistrate Judge Spero of its intention to file this appeal and asked that he stay his order, which he agreed to do until 11:00 a.m. on September 26, 2025.

## LEGAL STANDARD

In assessing whether Kazakevich presents a danger to the community or a risk of nonappearance, this Court conducts a *de novo* review of the factors under 18 U.S.C. § 3142. "[A] district court's review of a magistrate's detention order is to be conducted without deference to the magistrate's factual findings." *United States v. Koenig*, 912 F.2d 1190, 1192 (9th Cir. 1990). Thus, this Court must make its own determination regarding Kazakevich's detention or release.

Under the Bail Reform Act of 1984, the Court shall detain a defendant before trial without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as

required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a risk of nonappearance – the government need not prove that both factors are present. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a risk of nonappearance need only be supported by a preponderance of the evidence. *Id*.

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the person; (iii) the history and characteristics of the person, including that person's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol use, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the person was on probation or parole; and (iv) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

The Rules of Evidence do not apply at a detention hearing. 18 U.S.C. § 3142(f)(2)(B). It is well settled that at a detention hearing, the government may present evidence by way of an evidentiary proffer sufficient to make the court aware of the defendant's role in an offense, the weight of the evidence against the defendant, and other relevant factors. *See, e.g., United States v. Salerno*, 481 U.S. 739, 743 (1987).

## ARGUMENT

Kazakevich, a multiple-felon who appears to have yet to receive a custodial sentence longer than three years, conspired with co-defendant Aleksandr Akopov to traffic guns, personally sold two AR-style rifles, a handgun, and ammunition to undercover agents, supplied other handguns to be sold, and was found in possession of another handgun and ammunition. For these crimes, he faces a lengthy term of imprisonment. This Court should order him detained pending trial because his criminal history and actions in this case, as well as findings in the Pretrial Services bail report, demonstrate clear and convincing evidence that no condition or combination of conditions can reasonably assure the safety of

the community and at least a preponderance of the evidence that no condition or combination of conditions can reasonably assure his appearance. Each of the statutory factors in 18 U.S.C. § 3142(g) weighs in favor of detention.

### A. The Nature and Circumstances of the Offense and Kazakevich's Criminal History Demonstrate He is a Danger to the Community

There is clear and convincing evidence that Kazakevich presents a danger to the community. He personally sold two AR-style rifles, a handgun, and ammunition. He claimed to have ammunition that was specifically designed to allow the user to shoot someone in the head without killing the person, but rather "just make a dent in motherf***er's head, knock him out," as well as ammunition that would explode on impact and penetrate bulletproof vests, though the ammunition he supplied that day did not appear to meet these descriptors. He indicated an ability to easily supply further guns, and in fact did so: he facilitated the sale of three further handguns. When his boat was searched, law enforcement found yet another handgun, as well as various ammunition. As a multiple-felon, he is prohibited from possessing firearms and ammunition, let alone trafficking them. His flippancy in dealing deadly weapons underscores the danger he presents to the community.

### B. Kazakevich's Criminal History and the Weight of the Evidence Demonstrate Risk of Nonappearance

The crimes with which Kazakevich is charged are extremely serious. His criminal history and the amount of firearms involved expose him to a significant sentencing guidelines range. He has demonstrated himself to be a serious gun trafficker, and the evidence proving this is extremely strong. Agents surreptitiously recorded him during the July 3 transaction and interacting with Akopov subsequent to the July 11 transaction. Simply put, he faces very likely conviction and a very substantial prison sentence. The weight of evidence and high likelihood of conviction provide a strong incentive for him not to appear in court as required. *See United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991) (strong evidence of guilt "makes it more likely he will flee").

Additionally, his history of different types of fraud and forgery, theft, and false identification also demonstrates a penchant for dishonesty and therefore reason to believe he poses a risk of nonappearance. He has used various aliases and claimed to be from various countries. He has been

convicted of forgery and false identity-related crimes on multiple occasions. He has been found to have violated parole on multiple occasions, evincing a willingness to disregard legal strictures. There is clearly at least a preponderance of evidence that no condition or combination of conditions will reasonably mitigate his risk of nonappearance.

### C. Pretrial Services Report

On September 24, 2025, Pretrial Services filed a bail report which recommends that Kazakevich be released under conditions and proposes his brother as a surety. Many of the findings in Pretrial's report bear mentioning. First, though the defendant's brother offering to act as a surety is no doubt laudable, there are serious questions about the surety's ability to exercise appropriate moral suasion over the defendant. Aside from the proposed surety's own history, as noted in the report, there's a question of just how close the two brothers are; the defendant reports daily methamphetamine use since his "30s or 40s," and his brother told Pretrial Services he was not aware of the defendant's methamphetamine use. Then there is both the defendant's and surety's representation that the defendant makes money selling cars. It should not be lost on the Court that the defendant's most recent convictions including a felony for running a chop shop.

Though the defendant represents that the boat upon which he resides has no engine and is not functional, it's not clear if this is in fact the case, or how easy it might be to make it functional. The conditions recommended by Pretrial Services and ordered by Magistrate Judge Spero would do little to mitigate the danger the defendant presents to the community. Telling a multiple-felon who has repeatedly violated parole in the past to not possess firearms, when he is on video not just possessing, but dealing, firearms despite being prohibited from possessing them, provides little assurance.

### CONCLUSION

For the foregoing reasons, there is clear and convincing evidence that no condition or combination of conditions can reasonably assure the safety of the community, and at least a preponderance of the evidence that no condition or combination of conditions can reasonably assure Kazakevich's appearance in court. The government therefore respectfully requests that the Court revoke Magistrate Judge Spero's Order of Release, and instead order Kazakevich detained pending trial.

DATED: September 25, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Eli J. Cohen*
ELI J. COHEN
Assistant United States Attorney